# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| HOUSTON SPECIALTY INSURANCE CO. | CIVIL ACTION NO. 5:15-cv-47 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| CHESAPEAKE OPERATING, LLC, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Pending before the Court are the Motion for Summary Judgment [Record Document 55] by Plaintiff, Houston Specialty Insurance Co. ("Houston Specialty"), the Motion for Partial Summary Judgment [Record Document 57] by Defendant, DCW Transport, LLC ("DCW"), and the Motion for Partial Summary Judgment [Record Document 59] by Defendant, Chesapeake Operating, LLC ("Chesapeake"). Upon consideration of the motions and briefs filed by the parties and for the reasons stated below, Houston Specialty's motion is **GRANTED IN PART** and **DENIED IN PART**. DCW's motion is **DENIED**, and Chesapeake's motion is **DENIED**.

## BACKGROUND

The parties agree on the following facts:[1]

Houston Specialty issued policy number HSLR18-01355-00, with a policy period from September 21, 2011 to September 21, 2012 ("Houston Specialty policy") to DCW. Chesapeake, JC Fodale Energy Services, LLC ("Fodale"), and DCW seek coverage,

---

[1] These facts are taken from the parties' Stipulation of Undisputed Material Facts, found at Record Document 55-4, pp. 1-6.

attorneys' fees, and defense costs under the Houston Specialty policy for a personal injury suit filed in Texas State Court by Courtney Williams ("Williams"). In that suit, <u>Courtney Williams v. JC Fodale Energy Services, LLC D/B/A JC Fodale Energy Services LLC, Chesapeake Operating, LLC, Chesapeake Energy Corporation</u>, Cause No. 2014-45320, 127th District Court of Harris County, Texas ("the Williams suit"), Williams claims that he was injured on August 11, 2012, while acting in the course and scope of his employment as a driver for DCW while on a Chesapeake job site in Tilden, Texas. The suit alleges that Chesapeake contracted with DCW and Fodale for work at the job site, and that a Fodale employee, Carlos Carrero Corona ("Corona"), drove a forklift into a DCW truck occupied by Williams, causing him injuries.

Chesapeake and DCW entered into a Master Service Agreement ("MSA") for work at the job site where the accident occurred. At the time of the incident at issue, Williams was acting within the course and scope of his employment as a driver for DCW, tasked with performing DCW's obligations to Chesapeake under the MSA.

Chesapeake also contracted with Fodale for work at the job site. On the date of the incident at issue, a Fodale employee working in the course and scope of his employment for Fodale pursuant to its contract with Chesapeake at the job site, struck Williams' DCW truck with a forklift. This is the incident at issue in the Williams suit.

Houston Specialty filed this suit seeking a declaratory judgment that no defense or indemnity coverage is owed to Defendants, Chesapeake, Fodale, and DCW, under the Houston Specialty policy for any losses, damages, or costs arising out of or related to the

Williams suit. Houston Specialty argues that because DCW is the only named insured, and because neither Chesapeake nor Fodale qualify as omnibus or additional insureds, it has no obligation to defend or indemnify them in the Williams suit. It has filed a Motion for Summary Judgment [Record Document 55] to this effect. In turn, both DCW and Chesapeake have filed Motions for Partial Summary Judgment [Record Documents 57 & 59], each seeking a partial judgment declaring that Chesapeake qualifies as an additional insured and is entitled to both a defense and indemnity coverage under the Houston Specialty policy.

## **STANDARD**

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's

---

[2] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

case; rather, it need only point out the absence of supporting evidence. See id. at 322-323.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact with the motion for summary judgment, the nonmovant must demonstrate that there is, in fact, a genuine issue for dispute at trial by going "beyond the pleadings" and designating specific facts for support. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,'" by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985) (internal citations omitted); Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986) (the court must "review the facts drawing all inferences most favorable to the party opposing the motion"). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so weak and tenuous that it could not support a judgment in the nonmovant's favor. Little, 37 F.3d at 1075.

Additionally, Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. Pursuant to Local Rule 56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the

moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

## LAW AND ANALYSIS

All parties to the motions agree that Louisiana law applies to issues of interpretation of the insurance policy. Record Document 55-2, p. 9; Record Document 57-2 (arguing and citing Louisiana law); Record Document 59-2, p. 14; see also Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 260 (5th Cir. 2003) ("The parties agree, and Louisiana choice of law rules dictate, that in this action involving the interpretation of insurance policies issued in Louisiana, Louisiana substantive law governs our decision.").

Under Louisiana law, an insurance policy is a contract that must be construed in accordance with the general rules of contract interpretation set forth in the Civil Code. Id. at 262. A court's role in interpreting an insurance contract is to ascertain the common intent of the parties. Id. (citing La. Civ. Code art. 2045). The Louisiana Civil Code provides that the "words of a contract must be given their generally prevailing meaning," and when those words are "clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046 & 2047. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050. "An insurance contract . . . should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd

conclusion." Cadwallader v. Allstate Ins. Co., 2002-1637 (La. 6/27/03), 848 So. 2d 577, 580.

**A.     Duty to Defend**

Under Louisiana law, the insurer's duty to defend is generally broader than its duty to indemnify or its liability for damage claims. Lamar Advert. Co. v. Cont'l Cas. Co., 396 F.3d 654, 660 (5th Cir. 2005); Mossy Motors, Inc. v. Cameras Am., 2004-0726 (La. App. 4 Cir. 3/2/05), 898 So. 2d 602, 606. The duty to defend is determined by application of the "eight corners rule," which entails an examination of the "four corners" of the plaintiff's petition and the "four corners" of the insurance policy to determine whether facts alleged in the petition possibly fall within matters covered under the policy. Id.; Martco Ltd. P'ship v. Wellons, Inc., 588 F.3d 864, 872 (5th Cir. 2009). Allegations in the complaint are liberally interpreted when determining if the claim is covered by the scope of the insurer's duty to defend, and any ambiguity in the insurance policy is construed against the insurer. Martco, 588 F.3d 864 at 873. "The insurer has a duty to defend unless the allegations in the complaint as applied to the policy unambiguously preclude coverage." Id. at 872-73. Thus, the duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy. Id.; see also Vaughn v. Franklin, 2000-0291 (La. App. 1 Cir. 3/28/01), 785 So. 2d 79, 84 ("The test is not . . . whether the allegations unambiguously assert coverage, but only that they do not unambiguously exclude coverage.").

"If claims potentially covered under the insuring clause are pled, the insurer then has the burden of proving that the complaint states only facts that fall within an exclusion from coverage. To prevail, the insurer must show that the allegations in the complaint unambiguously fall within one of the exclusionary clauses." Martco, 588 F.3d at 872 (internal citations omitted).

Before considering any exclusions, the Court must first determine whether the Williams petition alleges a set of facts which possibly fall within coverage and for which coverage is not unambiguously excluded. On this point, the alleged insured bears the burden of proof. Id.

The parties dispute coverage under two policy provisions:

1. Commercial General Liability Form, and

2. Motor Carrier Coverage Form.[3]

Houston Specialty argues that there is no indemnity coverage or duty to defend DCW, Chesapeake, or Fodale in the Williams suit under either endorsement.

---

[3] At times in its briefing, Chesapeake refers to a "blanket additional insured endorsement" on the automobile policy that Houston Specialty claims was deleted. See Record Document 64, p. 7-8. The language cited by Chesapeake as providing additional insured status in the disputed provision is nearly identical to that in the commercial general liability form. See Record Document 55-5, p. 58 (HS0571) and Record Document 55-5, p. 66 (HS0579). Thus, if there is no duty to defend under the commercial general liability form (at HS0579) because of the language found therein, there would be no duty to defend under the disputed endorsement (at HS0571). Because the Court so finds, it is not necessary to determine whether the disputed endorsement actually remains an effective portion of the policy.

1. Commercial General Liability Form

As to the Commercial General Liability Form, the parties dispute whether Chesapeake qualifies as an insured under Endorsement CG 20 10 07 04 entitled "ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION," which provides, in part:

> Who Is An Insured is amended to include as an additional insured the person(s) or organizations(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part by:
>     1. Your acts or omissions; or
>     2. The acts or omissions of those acting on your behalf;
> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

Record Document 55-5, p. 66 (HS0579). "Your" refers to the named insured, DCW. Id. at 68 (HS0581), 64 (HS0577). The schedule identifies the additional insured person or organization as "Blanket as Required by Written Contract." Id. at 66 (HS0579). The parties do not dispute, at least for purposes of deciding these motions, that the MSA between DCW and Chesapeake was a valid, written contract requiring that DCW have Chesapeake named as an additional insured. See Record Document 55-2, p. 12 n.2; Record Document 59-2, p. 8. [4]

---

[4] In arguing that Chesapeake is not entitled to a defense or indemnity in this particular case, Houston Specialty couches its argument in terms that Chesapeake does not qualify as an "insured" under the General Liability policy. At the same time, Houston Specialty admits the blanket additional insured endorsement does make Chesapeake an additional insured, but only for the acts or omissions of DCW or those acting on DCW's behalf. Record Document 55-2, p. 12. Chesapeake agrees, but argues that because there may have been negligence on behalf of Williams (acting on behalf of DCW in the course and scope of his employment) in causing his own bodily injury that therefore Chesapeake is being sued for the actions of Williams. Thus, the argument before the

This Court must determine whether the Williams petition unambiguously excludes coverage under this portion of the policy, which provides additional insured status for liability for bodily injury caused, in whole or in part, by the acts or omissions of DCW or those acting on its behalf, in the performance of DCW's operations for Chesapeake. Here, in order for there to be a duty to defend under this provision of the policy, the Williams petition must allege a set of facts whereby Chesapeake could be held liable for bodily injury caused, at least in part, by DCW or someone acting on DCW's behalf.

The Williams petition alleges that Williams was parked in his truck when a Fodale employee, Corona, struck the truck with a forklift. It alleges that Corona was negligently operating the forklift while using his cell phone, and the negligence of Fodale, Corona, and Chesapeake caused Williams' injuries. Record Document 55-6. Notably, DCW is not named as a defendant in the suit. As to his own fault, the petition states, "Nothing Mr. Williams did or failed to do caused or in any way contributed to cause the injuries sustained." Id. at 5.

The allegations of the Williams petition, if proven, would not fall within the terms of this portion of the policy as they do not implicate the fault of either Williams or DCW. Accordingly, there is no duty to defend under this portion of the policy. See Yount v. Maisano, 627 So. 2d 148, 153 (La. 1993) ("[I]f, assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit.").

---

Court is not whether Chesapeake is an additional insured under the policy, but whether the allegations in the petition afford Chesapeake coverage.

Chesapeake and DCW would have this Court find a duty to defend because Williams may be found at fault in causing his own injuries. On this point, the Court finds the case of Holzenthal v. Sewerage & Water Bd. of New Orleans, 2006-0796 (La. App. 4 Cir. 1/10/07), 950 So. 2d 55, instructive. See also Gilbane Building Co. v. Admiral Insurance Co., 664 F.3d 589, 599-601 (5th Cir. 2011) (applying Texas law, but expressly rejecting this argument).

In Holzenthal, a set of homeowners sued the Sewerage and Water Board of New Orleans ("SWB") claiming they suffered damage to their homes during the course of a construction project. SWB claimed that Fidelity, as the insurer of SWB's consulting engineer, Brown, owed it a duty to defend the homeowners' suits and owed it coverage as an additional insured under Fidelity's policy with Brown. The policy contained the following provision:

> WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule [the SWB] as an insured but only with respect to liability arising out of your [Brown's] operations or premises owned by or rendered to you [Brown].

Holzenthal, 950 So. 2d at 84. In finding no duty to defend under this provision, the court noted,

> The plaintiffs' petitions are devoid of any allegations sufficient to inform Fidelity of the possibility that SWB could incur any liability to the plaintiffs arising out of Brown's operations. There is no allegation that SWB's liability to the plaintiffs comes through Brown, and no allegation that Brown was in any way negligent or failed to comply with its contractual obligations or the plans and specifications for the Project as they related to Brown. Absent such allegations, Fidelity has no obligation to defend SWB. None of the plaintiffs alleged any damages arising out of Brown's operations or premises owned by or rendered to Brown. Therefore, there can be no coverage for SWB as

an additional insured under the policy.

Id. Similarly, there are no allegations in the Williams petition that Williams or DCW were in any way negligent. Looking only at the four corners of the petition and the policy, as required by Louisiana law, the Court finds no duty to defend under this portion of the policy. [5]

2. Motor Carrier Coverage Form

As to the Motor Carrier Coverage Form, this form provides:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

Record Document 55-5, p. 154 (HS0667). The only "covered 'auto'" at issue here is the truck in which Williams was struck (the "Williams truck"), and the parties do not dispute that it qualifies as a "covered 'auto'" within the meaning of the policy. Instead, the parties focus on whether any damages resulted from the "use" of the covered auto.

The Louisiana Fifth Circuit Court of Appeals, interpreting a similarly-worded provision, explained that the "use" provision is "designed to limit coverage to liability resulting from conduct of the insured which constitutes both a use of the vehicle and a legal cause of the injury." Terminix Servs., Inc. v. State Farm Mut. Auto. Ins. Co., 01-720 (La. App. 5 Cir. 11/27/01), 803 So. 2d 198, 202. "In order for the conduct to arise out of

---

[5] Because as noted below the Court is pretermitting the issues of indemnity for Chesapeake, the Court does not at this time express an opinion on Chesapeake's argument that a finding of Williams' own negligence in causing his own injuries mandates indemnity coverage for Chesapeake under the policy.

the use of the vehicle, the automobile must be essential to the theory of liability. The specific duty breached by the insured must flow from use of the automobile." Id. The Louisiana Fourth Circuit has further instructed that "Courts should apply a common sense approach to determine whether the duty breached by the insured flowed from the automobile's 'use' under the policy language." Baker v. Hurst, 2010-0210 (La. App. 4 Cir. 10/6/10), 50 So. 3d 215, 219.

Here, the Williams petition only references the covered auto when it states that Williams was parked in his truck when a Fodale employee "slammed into" the truck with a forklift. Record Document 55-6, p. 4-5. The Williams petition does not allege facts which in any way implicate the breach of a duty by Chesapeake nor does it allege any negligence on the part of DCW or Williams acting on its behalf. Accordingly, applying a common sense approach, the Court finds that there is no duty to defend Chesapeake under this provision of the policy.

To the extent this provision could be read to provide coverage for DCW, the employee exclusion applies. Both the Commercial General Liability Coverage Form, at Record Document 55-5, p. 69 (HS0582), and the Motor Carrier Coverage Form, at Record Document 55-5, p. 156 (HS0669), contain provisions excluding coverage for bodily injury to an employee of the insured arising out of and in the course of employment by the insured or performing duties related to the conduct of the insured's business.

Houston Specialty argues that this provision excludes coverage for DCW because Williams was a direct employee of DCW at the time of the incident. DCW argues that

whether the injury arose out of Williams' employment is a disputed factual issue that precludes summary judgment. Record Document 61-2, pp. 14-15. First, the Court notes that DCW is NOT a defendant in the underlying Williams suit. However, Houston Specialty seeks declaratory judgment as to DCW.

Second, the Court disagrees with the argument made by DCW. The parties agree that, at the time of the incident at issue, Williams was acting in the course and scope of his employment as a driver for DCW. Record Document 55-4, p. 4. Accordingly, the Williams petition states only facts that fall within an exclusion from coverage, and thus there is no duty to defend DCW.[6]

**B.     Duties to Fodale**

Houston Specialty seeks a judgment declaring that it owes no duty to defend or indemnify Fodale because Fodale does not qualify as an insured under the policy. Fodale did not oppose Houston Specialty's motion, and neither Chesapeake nor DCW argue that Fodale is entitled to a defense or qualifies as an additional insured under the policy. Accordingly, Houston Specialty's motion is granted in that it owes no duty to defend Fodale.

**C.     Duty to Indemnify**

In order to determine the duty to indemnify, a court must apply the policy to the actual evidence adduced in the underlying liability trial. Martco, 588 F.3d at 877. To this Court's knowledge, the underlying Williams suit remains unresolved. Accordingly, any

---

[6] The Court notes an apparent exception to the employee exclusion, regarding liability assumed under an "insured contract." DCW has failed to address whether this exception might prevent the employee exclusion from being applied to DCW. Accordingly, the Court will assume it is not applicable.

claims regarding the duty to indemnify are not yet ripe. See Coregis Ins. Co. v. Sch. Bd. of Allen Parish, No. 07-30844, 2008 WL 2325632, at *2 (5th Cir. June 6, 2008) (noting that Louisiana law appears to provide that the duty to indemnify issue is not ripe until the underlying lawsuit is completed); Mossy Motors, Inc., 898 So. 2d at 608 (recognizing the appropriate time to make a determination of coverage afforded under an indemnity policy is after a judgment on the merits). Thus, to the extent Houston Specialty seeks a judgment regarding its duty to indemnify, its motion is denied.

**D.     The MSA, Waiver, and Estoppel**

In their motions to the Court, Chesapeake and DCW make somewhat amorphous arguments that Chesapeake is an additional insured and is entitled to coverage under the Houston Specialty policy by virtue of the MSA executed between Chesapeake and DCW. DCW claims that the MSA itself, and Houston Specialty's knowledge of the obligations therein, preclude any bar to coverage unless an exclusion or limitation is required as a matter of law. DCW bases this argument on the terms of the MSA. Specifically, it emphasizes a portion of the MSA which states,

> Prior to commencing work for [Chesapeake], [DCW] shall name (I) [Chesapeake]; (II) any party for whom [Chesapeake] is performing operations or services for including co-lessees, co-owners, partners or joint venturers, and (III) any other party identified by [Chesapeake] to which [Chesapeake] has agreed to provide insurance protection or benefit and/or to provide defense and/or indemnity, as an additional insured to the fullest extent permitted by law on all [DCW] required insurance with the sole exception of worker's compensation.

Record Document 61-5, p. 12 (emphasis added).

DCW alleges that it contacted Regions Insurance Services ("Regions"), who it

identifies as Houston Specialty's agent, in order to satisfy its obligation under the MSA to provide insurance for Chesapeake. Record Document 61-2, p. 15. DCW alleges: "A copy of the MSA was provided to the agent and the agent contacted [Houston Specialty] with the knowledge that DCW was required to make Chesapeake an additional insured 'to the fullest extent permitted by law'." Record Document 57-2, p. 6. DCW claims that Houston Specialty knew DCW sought coverage meeting its obligation under the MSA, and Houston Specialty proffered the policy at issue as one meeting those obligations. Id. Thus, DCW claims that because Houston Specialty had actual or constructive knowledge of the standards the policy was required to meet and was aware of the exclusions, but still accepted premiums, it is estopped from asserting any "power of avoidance" embodied in those exclusions. Record Document 61-2, p. 15. It cites Swain for & on Behalf of Estate of Swain v. Life Ins. Co. of Louisiana, 537 So. 2d 1297, 1298 (La. Ct. App. 1989), for this proposition.

In Swain, a widow sought benefits under her deceased husband's life insurance policy, but the defendant insurer rejected her claim for benefits on the grounds that her deceased husband made false claims on the application and was not in "sound health" on the date the policy was issued. 537 So. 2d at 1298. The court explained,

> An agent authorized to issue policies of insurance may bind the issuing company by waivers, representation, and other acts within the scope of his business, unless the insured had notice of a limitation of the agent's power. Acceptance of premium payments by an insurer after receiving knowledge of facts creating a power of avoidance or privilege of forfeiture constitutes a waiver of such power or privileges. Notice of facts which would cause a reasonable man to inquire further imposes a duty of investigation upon the insurer, and failure to investigate has been held to constitute a waiver of all

powers or privileges which a reasonable search would have uncovered.

Id. at 1300 (internal citations omitted). The court concluded that the insurer could not deny coverage on the basis of a "sound health" provision "when its agent had reason to suspect that the insured's health was dubious, yet accepted the premiums and issued the policy without requiring the insured to read and fill out the application form and without initiating further inquiry or investigation into the insured's condition." Id. at 1301.

The Swain case, and the concept of waiver generally, do not accurately reflect the circumstances present in this case. Neither DCW nor Chesapeake allege that Houston Specialty knew of some external circumstance that would necessarily preclude coverage under the policy, but accepted premiums regardless, thereby waiving non-coverage defenses. See Home Ins. Co. v. Matthews, 998 F.2d 305, 310 (5th Cir. 1993) (discussing power of avoidance, waiver, and estoppel, and noting confusion surrounding the principles).[7] Rather, DCW appears to be making an estoppel argument based on Houston

---

[7] To the extent DCW is making a waiver argument, issues of fact would preclude summary judgment based on that argument. As explained by the Louisiana Supreme Court, "[W]aiver may apply to any provision of an insurance contract under which the insurer knowingly and voluntarily elects to relinquish his right, power or privilege to avoid liability, even though the effect may bring within coverage risks originally excluded or not covered. Of course, reliable proof of such a knowing and voluntary waiver is necessary and the burden of producing it, as in the proof of obligations generally, falls on the party who demands performance." Tate v. Charles Aguillard Ins. & Real Estate, Inc., 508 So. 2d 1371, 1375 (La. 1987). Here, DCW has not shown that Houston Specialty knowingly and voluntarily waived anything. Neither has DCW provided sufficient evidence that Houston Specialty had knowledge of the cited provision of the MSA on which DCW relies, nor is it clear what the effect of such knowledge would be in the context of a waiver claim.

Specialty's alleged knowledge of DCW's obligations to Chesapeake.[8]

To establish an estoppel claim, a party is required to prove three elements: "(1) A representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance on such representation." Orleans Par. Sch. Bd. v. Lexington Ins. Co., 2012-1686 (La. App. 4 Cir. 6/5/13), 118 So. 3d 1203, 1222 (quoting Case v. Louisiana Medical Mut. Ins. Co., 624 So. 2d 1285, 1290 (La. App. 3rd Cir. 1993)). "Estoppel is disfavored in Louisiana law and 'rarely applied.'" Id. at 1023 (citing Case, 624 So. 2d at 1287). Here, DCW's argument hinges on showing that Houston Specialty made some kind of representation, either itself or through its agent. Because issues of fact exist regarding whether Houston Specialty made any representation, or whether Regions was Houston Specialty's agent such that it could make a representation on Houston Specialty's behalf, the Court will not grant summary judgment based on this argument.

DCW claims that Houston Specialty's alleged agent, Regions, was aware of the MSA requirements, and its knowledge of the MSA is imputed to Houston Specialty. It further claims that because the Houston Specialty policy was proffered as a policy meeting the requirements of the MSA, Houston Specialty cannot now avail itself of any power of avoidance which would permit not meeting the requirements of the MSA. Record Document 57-2, p. 6-7. In support of its argument, DCW offers an affidavit of Jason Debarge, who

---

[8] At times in its briefing to the Court, DCW refers to estoppel principles. See Record Document 57-2, p. 7 ("Accordingly, [Houston Specialty] is estopped from asserting any exclusion or limitation that narrows the Additional Insured Endorsement beyond the scope it would have had if narrowed only by the law.").

identifies himself as the owner of DCW. This affidavit states, in part,

> I am the Owner of DCW Transport, LLC. Regions Insurance, Inc., was our insurance agent. We supplied them with the Master Service Agreement between DCW Transport, LLC, and Chesapeake Operation, LLC. We requested insurance coverage for the Master Service Agreement. We were provided the Houston Specialty Company policy.

Record Document 57-3, p. 1. Attached to the affidavit are emails exchanged between DCW, Regions, and Chesapeake. DCW claims that these emails evidence that Houston Specialty and/or its agent had knowledge of the MSA.[9]

Houston Specialty denies that Regions is its agent or that it has authority to act on Houston Specialty's behalf; rather, it claims that Regions is DCW's agent. It offers the affidavit of Lynda Daughtery McCallon of Regional Insurance Services Company, LLC ("RISCOM") to show that (1) RISCOM is the agent for Houston Specialty and the Houston Specialty policy was underwritten, bound, and issued by RISCOM on behalf of Houston Specialty; (2) Regions represents individuals or organizations in applying for insurance coverage from various insurance carriers; and (3) Regions is not an agent of Houston Specialty and cannot bind or modify coverage under a Houston Specialty policy. Record Document 65-1. Clearly, issues of fact exist regarding whether Regions was Houston Specialty's agent such that its knowledge could be imputed to Houston Specialty.

As an alternative argument, DCW claims the emails show that Houston Specialty had actual knowledge of the MSA because the emails suggest that Regions was communicating

---

[9] The Court notes two instances in these attachments wherein Regions is referred to as DCW's agent, as opposed to Houston Specialty's agent. Record Document 57-3, p. 1, 20.

with Houston Specialty. The Court notes that Houston Specialty was not a party to the emails. Additionally, the emails do not show that Houston Specialty had knowledge of the substance of the entire MSA, nor that it made any representation that its policy would meet all of the requirements of the MSA. See Orleans Par. Sch. Bd., 118 So. 3d at 1223. The Court thus denies summary judgment on the Defendants' estoppel argument.

To the extent DCW is making a policy reformation argument, summary judgment is denied on this issue as well. "As other written agreements, insurance policies may be reformed if, through mutual error or fraud, the policy as issued does not express the agreement of the parties." Samuels v. State Farm Mut. Auto. Ins. Co., 2006-0034 (La. 10/17/06), 939 So. 2d 1235, 1240 (citation omitted). "Reformation is an equitable remedy designed to correct an error in the contract." Fruge v. Amerisure Mut. Ins. Co., 663 F.3d 743, 748 (5th Cir. 2011). In the absence of fraud, the burden is on the party seeking reformation to prove the alleged mutual error. Id.; Samuels, 939 So. 2d at 1240.

For the reasons explained above, issues of material fact exist regarding whether any alleged error was mutual. It is disputed whether the true intent of both Houston Specialty and DCW was to provide coverage according to the terms of the MSA. Thus, to the extent DCW proffers an argument based on mutual error, this argument it is rejected.

## CONCLUSION

For the foregoing reasons, Houston Specialty's Motion for Summary Judgment [Record Document 55] is hereby **GRANTED IN PART** and **DENIED IN PART**. The motion is granted insofar as Houston Specialty has no duty to defend under the provisions of the

policy argued in the motion. The motion is denied as to the duty to indemnify, with the right to re-urge at the appropriate time. DCW and Chesapeake's Motions for Partial Summary Judgment [Record Documents 57 & 59] are **DENIED**, with the right to re-urge the indemnity issue at the appropriate time.

**THUS DONE AND SIGNED** this 27th day of September, 2017 in Shreveport, Louisiana.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE